IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **BRYANT KORTEZ BATES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. 3:13-CV-1659-L-BK |
| | § | |
| **CAROLYN COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

This case has been referred to the undersigned for Findings, Conclusions, and Recommendation. The cause is now before the Court on the parties' cross-motions for summary judgment. For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 13) be **GRANTED**, Defendant's *Motion for Summary Judgment* (Doc. 15) be **DENIED**, and the Commissioner's decision be **REVERSED AND REMANDED**.

## I.     BACKGROUND[1]

### A.     Procedural History

Plaintiff seeks judicial review of a final decision by the Commissioner denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). In July 2010, Plaintiff filed for DIB and SSI, claiming that he had been disabled since that time due to his cyclic vomiting disorder ("CVS"). (Tr. 428, 478, 533, 535, 601, 640, 660). His application was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g). (Tr. 1-5, 425-45, 480-91, 495-98).

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

B.      **Factual Background**

At the time of his alleged onset of disability, Plaintiff was 38 years old with a high school

education and past relevant work as a truck driver. (Tr. 98, 439, 472, 602). From 2006 through

2011, Plaintiff repeatedly went to the hospital and saw various doctors for abdominal pain,

chronic nausea, vomiting, weight loss, blood in his stool, and diarrhea, and he underwent

numerous tests and procedures including an endoscopy, x-rays, gallbladder removal, a liver

biopsy, a small bowel resection, and a colonoscopy. *E.g.*, Tr. 672, 693, 695, 703-07, 744, 755,

786-92, 794-98, 801, 804-05, 827, 838-39, 841-43, 847, 861, 863-64, 871, 873, 882, 884-85,

898, 905-06, 911-12, 914-16, 930-31, 997, 1055, 1211, 1231.

A patient information sheet contained in the record states that people who experience

CVS have abdominal pain as well as bouts of vomiting and retching up to five or six times an

hour, lasting anywhere from one to four days and possibly as long as ten days, alternating with

longer, symptom-free periods. (Tr. 852-54). In 2007, Plaintiff reported to his physician that his

pain came in episodes lasting for two to three weeks and then would go away for a month or two

before returning. (Tr. 982). In July 2008, Plaintiff's physician stated that Plaintiff had CVS,

noting that the condition resulted in unexplained episodes of protracted vomiting and abdominal

pain which could last for several hours although his functional capacity between episodes should

be excellent. (Tr. 666). By September 2011, Plaintiff stated that his pain was present throughout

the day for 25 days per month, and he experienced some vomiting with the pain. (Tr. 1247). The

doctor noted that a 20-pound weight loss had been documented over the past year. (Tr. 1247).

In March 2007, Plaintiff was diagnosed with major depressive disorder during a hospital

stay and started on an anti-depressant. (Tr. 995-96). During a November 2010 consultative

2

psychological examination, Plaintiff reported feeling depressed, and the examining doctor diagnosed him with dysthymic disorder.  (Tr. 721, 723).

C.    **Administrative Hearing**

During the administrative hearing, Plaintiff testified that he vomited three to four times a day and none of his medications had been particularly helpful in stopping it.  (Tr. 453, 457).  He averred that he spent most of the day lying down at home.  (Tr. 470).  A vocational expert ("VE") testified in response to the ALJ's question that if an employee had to take unscheduled breaks during the workday for several minutes at a time, it would interfere with his ability to work.  (Tr. 475).  Additionally, the VE stated that if an employee's bathroom breaks occurred more than once or twice an hour it would be very difficult for the employee to meet minimal production requirements, and such an individual would not be able to work at any jobs.  (Tr. 476).

D.    **The ALJ's Findings**

The ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. (Tr. 425-45).  At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his disability onset date of July 2010.  (Tr. 430). At step two, the ALJ found that Plaintiff's CVS and dysthymic disorder were severe impairments.  (Tr. 430).  At step three, the ALJ found that Plaintiff's medically determinable impairments did not meet or equal a listed impairment as defined in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 431).  The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully credible because, *inter alia*, (1) he had been able to perform substantial gainful activity prior to his onset date despite the abdominal problems he was having at the time; (2) repeated examinations and tests had failed to

3

find a cause for his health problems; (3) the frequency of emergency room visits did not support the claimed severity of his illness; (4) the psychological consultative examination did not reveal marked mental limitations; and (5) no physician had found that Plaintiff was or would be disabled for any 12-month period.  (Tr. 438).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") for light work, except that (1) he must be able to change positions at 30-minute intervals; (2) he should not climb ropes, ladders, or scaffolds; (3) he could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; (4) he must avoid extreme temperatures, vibrations, fast moving machinery, sharp objects, open flames, and unprotected heights; (5) he was limited to simple instructions with no more than occasional contact with others; and (6) he was limited to minimal production requirements.  (Tr. 432 ).  At step four, the ALJ found that Plaintiff could not perform any of his past relevant work.  (Tr. 439).  Lastly, at step five, the ALJ concluded that Plaintiff could perform a significant number of light and sedentary jobs in the national economy. (Tr. 439-40).  The ALJ thus determined that Plaintiff was not disabled at any relevant time through the date of the decision on April 23, 2012.  (Tr. 440).

E.    **New Evidence Presented to the Appeals Council**

Plaintiff presented new evidence to the Appeals Council relating to both his physical and mental health treatment.  In May 2012, Plaintiff was admitted to the hospital for several days for chronic abdominal pain, nausea, and vomiting.  (Tr. 170).  It was noted that his symptoms dated back to 1998 and were gradually worsening.  (Tr. 171).  In June 2012, Plaintiff presented to a pain management center for evaluation of his abdominal pain, stating that his pain was ten on a ten-point scale, he was vomiting daily, and he had difficulty sleeping.  (Tr. 330).  It was noted

4

that the onset of Plaintiff's CVS occurred long before, but that it had been worsening over the past two years.  (Tr. 360).

In July 2012, Plaintiff's treating psychiatrist, Dr. Aaron Van Wright, stated that he had reviewed Plaintiff's history and although Plaintiff had undergone numerous diagnostic studies to identify the source of his pain, nothing had really helped, his pain had "seemingly taken away his ability to maintain employment," his condition was poor, and his prognosis was unknown.  (Tr. 147).  In August 2012, Plaintiff was admitted to Timberlawn Mental Health System, complaining of increasing stomach pain, a history of recurrent major depression, and increased depression with suicidal ideation due to his health problems.  He remained hospitalized for more than a week.  (Tr. 93, 95, 99, 118).  Toward the end of his stay, Plaintiff was vomiting again, and he expressed anger that he continued to suffer, that numerous medical procedures yielded no conclusions, and that medication had no effect on his pain.  (Tr. 94, 117, 129).  Dr. Van Wright stated in February 2013 that Plaintiff's prognosis was poor and the length of his disability was unknown.  (Tr. 87).

The Appeals Council acknowledged reviewing the new evidence, but determined that it was not material because it related to Plaintiff's health after the date of the ALJ's decision and therefore would not affect the Council's review of that decision.  (Tr. 2).

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine

whether a claimant is disabled:  (1) an individual who is working and engaging in substantial

gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not

disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the

regulations will be considered disabled without consideration of vocational factors; (4) if an

individual is capable of performing his past work, a finding of "not disabled" must be made; (5)

if an individual's impairment precludes him from performing his past work, other factors

including age, education, past work experience, and residual functional capacity must be

considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123,

125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant.

*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the

Commissioner determines at any point during the first four steps that the claimant is disabled or

is not disabled.  *Id.*  If the claimant satisfies his burden under the first four steps, the burden shifts

to the Commissioner at step five to show that there is other gainful employment available in the

national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th

Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational

Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga*

*v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the

Commissioner's position is supported by substantial evidence and whether the Commissioner

applied proper legal standards in evaluating the evidence.  *Greenspan*, 38 F.3d at 236; 42 U.S.C.

§§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance,

and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III.   ARGUMENT AND ANALYSIS

As rephrased and reordered by the undersigned, Plaintiff raises the following arguments:

1.   Whether the ALJ's RFC is supported by substantial evidence.

2.   Whether the ALJ erred in failing to assess Plaintiff's ability to maintain employment for an extended period of time.

3.   Whether the new medical evidence Plaintiff submitted for the first time to the Appeals Council justified a remand to the ALJ or, alternatively, whether the Appeals Council reversibly erred by failing to adequately explain why the new evidence was not material.

**1.       Whether the ALJ's RFC is supported by substantial evidence**

Plaintiff argues that although the ALJ found him to have the severe disorder of CVS, the ALJ did not account for that disorder in determining his RFC because he assessed no functional limitations that anyone suffering from CVS would have, such as the need to lie down when experiencing a CVS episode. (Doc. 14 at 21-25). Additionally, Plaintiff contends that the ALJ formulated the RFC without any expert medical opinion as to Plaintiff's ability to perform work-related activities in light of his impairments. *Id.* at 25-27; *see also* Doc. 18 at 4-9 (reply brief, reiterating arguments).

Defendant responds that substantial evidence supports the ALJ's RFC assessment, such as (1) physician statements from 2007 that Plaintiff exhibited drug-seeking behavior, malingering, exaggerated symptoms, and a failure to cooperate with treatment; (2) Plaintiff's

grossly normal upper gastrointestinal examination in March 2007; (3) the fact that Plaintiff's

symptoms improved with medicine; (4) a doctor's opinion that Plaintiff's long term prognosis

was good and his functional capacity between episodes was excellent; (5) a physician's opinion

that, as of August 2011, Plaintiff's disability was expected to last less than six months; and (6)

another physician's release of Plaintiff to work in July 2010.  (Doc. 15 at 11-14, 16-17).

Defendant contests Plaintiff's allegation that the ALJ "played doctor" in developing his RFC,

noting that the ALJ properly found based on the objective medical evidence that Plaintiff was not

as limited in his abilities as he claimed.  *Id.* at 19.

       The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to

do work on a sustained basis in an ordinary work setting despite his impairments.  20 C.F.R.

§§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  RFC refers to the

most that a claimant can do despite his physical and mental limitations.  20 C.F.R.

§§ 404.1545(a), 416.945(a).  The RFC is considered by the ALJ, along with the claimant's age,

education, and work experience, in determining whether a claimant can work.  20 C.F.R.

§§ 404.1520(a)(4), 416.920(a)(4).  Generally, an ALJ should request a medical source statement

that describes the types of work a claimant can still perform.  *Ripley v. Chater*, 67 F.3d 552, 557

(5th Cir. 1995).  However, the absence of such a statement is not reversible error if the ALJ's

decision is nevertheless supported by substantial evidence.  *Id.*  Reversal is warranted only if the

claimant shows that he was prejudiced.  *Id.*  Where no medical statement has been provided, the

court's inquiry focuses upon whether the ALJ's decision is supported by substantial evidence in

the record.  *Id.*

       In *Ripley*, the ALJ ruled that the claimant could perform sedentary work even though

there was no medical evidence or testimony supporting that conclusion. *Id.* The appellate court

noted that the claimant's record contained a vast amount of evidence establishing that he had a

back problem, but did not clearly establish the effect that condition had on his ability to work.

*Id.* The only evidence regarding the claimant's ability to work was his own testimony that he

was unable to sit or stand for any length of time without experiencing a great deal of pain. *Id.* at

n.28. Nevertheless, the ALJ found that the claimant could sit for six hours in a work day. *Id.*

The appellate court remanded with instructions for the ALJ to obtain a report from a treating

physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-

58. The court rejected the Commissioner's attempt to argue that the medical evidence

substantially supported the ALJ's conclusion because the court was unable to determine the

effects of the claimant's conditions, "no matter how 'small'" on his ability to work, absent a

report from a qualified medical expert. *Id.* at 558 n.27.

     In this case, the medical evidence indicates that Plaintiff has a longstanding diagnosis of

CVS that causes him to have chronic abdominal pain and recurrent episodes of vomiting that

occur frequently and can last for days at a time, which has led to Plaintiff being hospitalized

numerous times. (Tr. 672, 693-94, 703-07, 744, 754, 800, 804-05, 826-27, 861, 871, 873, 882,

898, 911, 997, 1055, 1211, 1231). In finding that Plaintiff's CVS was a "severe" impairment, the

ALJ necessarily found that the disorder interfered with his ability to work. *See Stone v. Heckler*,

752 F.2d 1099, 1101, 1104-05 (5th Cir. 1985) (holding that an impairment is not severe "only if

it is a slight abnormality having such minimal effect on the individual that it would not be

expected to interfere with the individual's ability to work, irrespective of age, education, or work

experience."); *see* Tr. 431 (ALJ concluding that "the claimant's medically determinable

9

impairments . . . are impairments that could be expected to interfere with the ability to perform basic work activities.").

After making that finding, it became incumbent upon the ALJ to determine the effects of the disorder on Plaintiff's ability to work in assessing his RFC.  Yet it is not evident from the record how the ALJ attempted to compensate for Plaintiff's CVS when formulating his RFC. There is no medical source statement or other medical record or testimony that addresses Plaintiff's ability to perform work-related activities.  Nevertheless, the ALJ concluded that Plaintiff could perform light work with various postural limitations and a limitation to simple instructions, occasional contact with others, and minimal production requirements.  (Tr. 432 ). There is simply no medical support in the record for this RFC.

Further, the RFC does not take into account the known symptoms of Plaintiff's CVS, such as his frequent vomiting, for which he would need bathroom breaks, and the possibility that Plaintiff's condition may cause him to miss work when he has a flare up.  In short, the RFC is not supported by substantial evidence.  *Ripley*, 67 F.3d at 557.  Moreover, Plaintiff was prejudiced by the faulty RFC as a medical source statement from a treating physician might lead to a different decision.  *Id.* at n.22; *see also* Tr. 475-76 (VE's testimony that an employee's need to take unscheduled breaks during the workday for several minutes at a time would interfere with his ability to work, and if such breaks occurred more than once or twice an hour he would not be employable).  In sum, this case should be remanded for the ALJ to obtain from a treating physician a report regarding the impact of Plaintiff's condition upon his ability to work.  *See Ripley*, 67 F.3d at 558 (remanding case for the ALJ to obtain a treating physician report regarding the impact of the claimant's condition on his ability to work).  The physician report should

address Plaintiff's ability to work both when he is asymptomatic (if that is ever the case) and when he is having a flare-up of CVS, and the report also should address Plaintiff's ability to work on a sustained basis, i.e., 40 hours per week.  *See Myers*, 238 F.3d at 620 ("SSR 96-8p provides that [an RFC] is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

2.      **Whether the ALJ erred in failing to assess Plaintiff's ability to maintain employment for an extended period of time**

Plaintiff argues that because CVS is an episodic disease, the ALJ erred by not assessing his ability to maintain employment for an extended period of time, particularly in light of his past unsuccessful work attempts.  (Doc. 14 at 27-30); *see* Doc. 18 at 10-11 (reply brief, reiterating arguments).  Defendant counters that Plaintiff has been to work for long periods of time in the past, medication improved his symptoms, and he only felt worse after he stopped taking the medication.  (Doc. 15 at 19-20).

An ALJ need not make a finding regarding a claimant's ability to maintain employment in every case.  *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003).  Inherent in the definition of RFC is the understanding that the claimant has an ability to work on a sustained basis.  *Dunbar v. Barnhart*, 330 F.3d 670, 671 (5th Cir. 2003).  Thus, "[u]sually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment."  *Frank*, 326 F.3d at 619.  The appellate court made clear in *Frank* that the ALJ only needs to make a specific finding regarding a claimant's ability to maintain work where, "by its nature, the claimant's physical ailment waxes

11

and wanes in its manifestation of disabling symptoms." *Id.* Further, "in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time." *See id.* at 619-20.

The *Frank* court gave an example of the type of evidence that might require a separate finding of whether a claimant had the ability to maintain employment:  "For example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination." *Id.* at 619.  On the other hand, a claimant's testimony that his back pain caused him to have both good and bad days "simply do[es] not rise to the level of impairment anticipated by the Court in *Frank*."  *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005).  Specifically, in *Perez*, (1) the plaintiff claimed that his pain waxed and waned between epidural injections, which were given over time; (2) he had "good days and bad days"; and (3) his expert witness testified that he did not believe the plaintiff could reliably work a 30-hour week.  *Id.* at 465-66.  The appellate court found that this was not sufficient to bring the claimant's case within the scope of *Frank* because "[i]t is axiomatic that the pain from any type of ailment will vary in intensity, especially the farther one gets from treatment that alleviates pain." *Id.* at 465; *cf. Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986) (finding that while a claimant may be capable of finding a job and working for short periods of time, it may be that "[t]he nature of the mental impairment is such . . . that the claimant is unable to remain employed for any significant period of time.").

CVS is characterized by its episodic features and the way in which it waxes and wanes

over time.  This is evident both from Plaintiff's medical records, which document periods of increased symptoms at times and fewer symptoms at other times, and in the medical literature and caselaw.  *See* Stedman's Medical Dictionary (27th ed. 2000) (available on Westlaw) (describing CVS as "a syndrome of recurrent bouts of vomiting"); *Cyclic Vomiting Syndrome*, National Digestive Diseases Information Clearing House, U.S. Dept. of Health and Human Services, www.digestive.niddk.nih.gov/ddiseases/pubs/cvs/ (last visited Jan. 9, 2014) (stating that CVS "is characterized by episodes or cycles of severe nausea and vomiting that last for hours, or even days, and that alternate with intervals with no symptoms . . . Episodes can be so severe that a person has to stay in bed for days, unable to go to school or work."); *Jackson v. Astrue*, No. 11-CV-6470T, 2012 WL 5423708 at *5 n.4 (W.D.N.Y. 2012) (quoting NIH definition).

Given the episodic nature of CVS, the ALJ should have made a specific finding regarding Plaintiff's ability to maintain work because his CVS waxes and wanes in its manifestation of disabling symptoms.  *Frank*, 326 F.3d at 619-20.  In sum, this case should be remanded for additional proceedings for the above stated reasons.  In these additional proceedings, the ALJ also should address the new medical evidence of record that was presented for the first time to the Appeals Council.  *See Ripley*, 67 F.3d at 558 (remanding a case for the ALJ to (1) obtain a treating physician report regarding the impact of the claimant's condition on his ability to work, (2) reconsider the claimant's subjective complaints of pain, and (3) consider new medical records).

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 13) be **GRANTED**, Defendant's *Motion for Summary Judgment* (Doc. 15) be **DENIED**, and the Commissioner's decision be **REVERSED AND REMANDED**.

   **SO RECOMMENDED** on January 10, 2014.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

   A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

14