IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRYANT KORTEZ BATES, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:13-CV-1659-L-BK |
| | § | |
| CAROLYN COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Following the Court's judgment reversing and remanding the Commissioner's decision in this social security benefits appeal, Plaintiff's attorney filed an *Application for Attorneys' Fees Under the Equal Access to Justice Act*.  (Doc. 24).  Pursuant to District Judge Lindsay's *Order of Reference* (Doc. 25), the cause is now before the undersigned magistrate judge for findings and a recommendation.  For the reasons that follow, it is recommended that Plaintiff's request for fees be **GRANTED IN PART,** and the Court award Plaintiff the sum of $12,918.57 in attorney's fees as well as reimbursement of the $400.00 filing fee.

Under the Equal Access to Justice Act ("EAJA"), a court must award attorney's fees and expenses if: (1) the claimant is a "prevailing party," (2) the position of the United States was not "substantially justified," and (3) there are no special circumstances that would make an award unjust.  28 U.S.C. § 2412(d)(1)(A); *Sims v. Apfel*, 238 F.3d 597, 599-600 (5th Cir. 2001).  However, the award of attorney's fees must be reasonable.  *See* 28 U.S.C. § 2412(b).  Additionally, the Court should consider the factors announced in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by  Blanchard v.*

*Bergeron*, 489 U.S. 87 (1989).[1]  The Commissioner does not contest that Plaintiff was the prevailing party or argue that her own position was substantially justified or that other circumstances would make an award of fees and costs in Plaintiff's favor unjust.  Rather, the Commissioner takes issue with some of counsels' billable hours, as well as their hourly billable rate.

### 1.  Number of Hours Billed

In his initial application, Plaintiff applies for a total award of $12,914.47, based on (1) 64.93 hours of attorney work at the hourly rate of $187.54; (2) 4.5 hours of legal assistant time at the rate of $75.00; and (3) filing fees of $400.00.  (Doc. 24 at 3-5, 7).  The Commissioner first objects to counsels' billing a total of 30 minutes for time spent talking to each other or their client.  (Doc. 26 at 2-4).  Upon review, the Court finds that time is compensable, as there is nothing untoward or unusual about two attorneys working on one case and their resulting need to discuss it among themselves and with their client.  This is especially so where one of the attorneys represented Plaintiff at the administrative level and one served as his appellate counsel in this court, and particularly considering the unusual nature of the disability in this case (cyclical vomiting syndrome).  (Doc. 27 at 3).  The need for consultation between counsel seems obvious and does not appear to be an instance of over-staffing.  Also, the authority the Commissioner cites in support of her argument is both non-binding and inapposite, as the attorneys in that case sought compensation for far more time, a total of 20.7 hours for strategy sessions and "decision-

---

[1] The factors enumerated in *Johnson* are: (1) the time and labor required; (2) the novelty and difficult of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Johnson*, 488 F.2d at 717-19.

making." *See United States v. A Leasehold Interest in Property Located at 850 S. Maple, Ann Arbor, Washtenaw Cty., Mich.*, 789 F. Supp. 1385, 1393 (E.D. Mich. 1992). The Court also does not deem counsel talking with their client twice about the result of his case as excessive especially when the client initiated one of the telephone calls. *See* Doc. 24-3 at 5.

Additionally, the Commissioner objects to both attorneys billing time for reviewing the same documents, such as the Commissioner's answer and cross-motion for summary judgment. (Doc. 26 at 3-4). However, this is commonplace in modern firm practice where more than one attorney often is assigned to work on a case. Moreover, given the relatively small amounts of time involved (four blocks of time ranging from 10 to 20 minutes) and in viewing such minor instances of "duplicate" work across the billing records as a whole, that time should be compensable as well. Again, this case is unlike the precedent cited by the Commissioner, *Cooper v. Pentecost*, 77 F.3d 829 (5th Cir. 1996). There, the district court's decision to cut attorney hours was affirmed where two attorneys had billed five hours for individually reviewing a transcript on one day, then claimed another six-plus hours for reviewing the same transcript with co-counsel the following day. The present case does not present an analogously compelling situation that would justify cutting the hours claimed.

In the same vein, the Commissioner objects to counsel billing time for reviewing each other's work. (Doc. 26 at 3). Again, the court finds this to be a commonplace occurrence when attorneys are working together on a case, and the amounts billed and amount of time involved are very small (two instances totaling 50 minutes) and entirely reasonable. Thus, the Commissioner's request to reduce counsel's billable hours by this amount should be denied.

## 2. Hourly Rate

Counsel seek reimbursement of their billable hours at the rate of $187.54, a figure which has been inflation-adjusted based on the national consumer price index ("national CPI"). (Doc. 24 at 2-3). The Commissioner objects to the $187.54 hourly rate, arguing that the Court should instead apply the United States Department of Labor's CPI data for the Dallas-Ft. Worth area ("DFW CPI") and pay a rate of $181.45 for work counsel performed in 2013 and $183.74 for work performed in 2014. (Doc. 26 at 4-6). The Commissioner also contends that *Astrue v. Ratliff*, 560 U.S. 586, 594 (2010) directs that any award of EAJA fees must be made payable to Plaintiff, not his counsel. (Doc. 26 at 7-8).

Plaintiff replies that counsels' hourly rates are calculated based on the national CPI because counsel has an inter-regional practice including significant work outside the Fifth Circuit.[2] (Doc. 27 at 4-5). Additionally, he asserts that the Commissioner is estopped from challenging the use of the national CPI due to Judge Boyle's recent decision to apply that index in calculating Fouché's request for fees in *Goin v. Astrue*, No. 3:12-CV-2471-B-BK (N.D. Tex. April 29, 2013) (noting the government's concession that it and this Court have accepted the national CPI rates in the past, Plaintiff's interstate and inter-regional practice, and concerns for consistency and reliability). (Doc. 27 at 4-7) (citing *Taylor v. Colvin*, No. 12-CV-2750-P-BH, 2014 WL 696494, *3 (N.D. Tex. 2014) (finding, in part, that the Commissioner was collaterally estopped by *Goin* from arguing that the national CPI did not apply). Finally, Plaintiff requests reimbursement for an additional 4.4 hours of work incurred in responding to the Commissioner's objections to his fee request at an additional cost of $825.18. (Doc. 27 at 8-9).

---

[2] While Plaintiff's brief principally refers to the practice of attorney William Fouché, he seeks the same hourly rate of reimbursement for co-counsel, Joseph Smith.

As an initial matter, Plaintiff's argument that the doctrine of offensive collateral estoppel should apply against the Commissioner is meritless.  In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), the Supreme Court was asked to determine "whether a party who has had issues of fact adjudicated adversely to it in an equitable action may be collaterally estopped from relitigating the same issues before a jury in a subsequent legal action brought against it by a new party." 439 U.S. at 324.  The Court responded affirmatively, noting offensive collateral estoppel's "dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Id.* at 326.  Several years later, however, the Court decided *United States v. Mendoza*, 464 U.S. 154, 162-63 (1984), holding that non-mutual offensive collateral estoppel cannot be used against the government.  The Court reasoned that ruling otherwise would (1) significantly thwart the development of important issues of law by freezing the first final decision rendered on a particular issue; (2) deprive the high Court of the benefit it received from several courts of appeals exploring an issue before taking up the matter itself; and (3) force the government to appeal every adverse decision in order to avoid foreclosing further review.  464 U.S. at 160-61. *See also Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 323 (5th Cir. 1984) (holding that *Mendoza* foreclosed the use of non-mutual collateral estoppel against the Secretary of Health and Human Services).  Accordingly, this Court should not apply the doctrine of offensive collateral estoppel to find that it is bound by the *Goin* decision.

The Court next undertakes consideration of whether the national CPI or the DFW CPI-based fee rates should apply in this case.  The Court of Appeals for the Fifth Circuit has stated that, generally, if there is a significant difference in the cost of living since the enactment of the EAJA *in a particular locale* that would justify an increase in the attorneys' fee rate, then an

increase should be granted.  *Baker v. Bowen*, 839 F.2d 1075, 1084 (5th Cir. 1988).  The court cautioned that the rule does not necessarily require that attorneys' fee awards track the cost-of-living index for the geographical area although it noted that this indicator was "certainly significant."  *Id.*  Ultimately, the court made clear that the decision of whether and how much to increase an attorney's fee rate based on a rise in the cost of living was within the district court's discretion.  *Id.*

To the undersigned's knowledge, the first judge in the Dallas Division of the Northern District of Texas to address the issue of whether to apply the national CPI or the DFW CPI to determine EAJA attorneys' fee rates was District Judge Boyle in the *Goin* decision referenced above.  In that case, Judge Boyle noted the plaintiff's evidence indicating that regional CPIs are gathered less frequently, use smaller samples, and are more volatile than the national CPI.  *Goin, 2013 WL 1797862, at *5*.  Additionally, the court observed that the plaintiff's counsel, William Fouché (who is the same attorney involved in this case), practiced out of the state frequently and only a small percentage of his work was in Dallas such that the national CPI was more reliable and consistent as applied to him.  *Id.*  Finally, the court relied on the government's concession to use of the national CPI in the past in ruling that the national CPI would apply for purposes of calculating Fouché's fee.  *Id.*

After *Goin* came Magistrate Judge Horan's recommendation in *Taylor, 2014 WL 696494*.  In that case, Fouché again moved for attorneys' fees based on the national CPI calculation.  (Case No. 3:12-cv-2750-P-BN, Doc. 24 at 2-3).  Judge Horan found that in light of the *Goin* decision and the fact that plaintiff's counsel was an interstate attorney who did not frequently work in Dallas, application of the national CPI to the fee calculation was appropriate.

*Taylor*, 2014 WL 694494, at *2-3.  Over the Commissioner's objections, Judge Solis adopted Judge Horan's recommendation on February 21, 2014.  *Id.* at 1.

The last decision discussing this issue of which the undersigned is aware is *Hamblen v. Colvin*, --- F.Supp.2d ---, 2014 WL 1516157, No. 12-cv-2009-BH (N.D. Tex. 2014).  There, Fouché again moved for attorneys' fees based on the national CPI.  (Case No. 3:12-cv-2009-BH, Doc. 27 at 2-3).  Judge Ramirez declined to apply the national CPI and applied the DFW CPI instead, relying heavily on the *Baker* decision.  *Hamblen*, 2014 WL 1516157, *2, 4-5.

In *Baker*, five social security claimants successfully appealed the Commissioner's denial of benefits in federal court.  *Baker*, 839 F.2d at 1079.  Each party then sought an award of attorney's fees under the EAJA.  In each case, the district court awarded fees at the statutory maximum, but refused to exercise discretion to award fees in excess of that amount.  *Id.*  The appellate court reviewed a sampling of social security cases recently decided in the Dallas Division and found that fee awards among judges varied greatly although they were based upon virtually identical factors and supporting affidavits.  *Id.* at 1083.  The court explained that the cost of living was a problem that affected all litigants within a district equally and, thus, "a determination of the appropriateness of [increases in cost of living adjustments to EAJA fee awards] should be uniform in the Dallas federal courts."  *Id.* at 1079.  Since that time, the Court of Appeals for the Fifth Circuit has reiterated that EAJA attorneys' fee rates should be uniform within a particular district court division.  *Hall v. Shalala*, 50 F.3d 367, 368 (5th Cir. 1995) (stating that "the cost-of-living" and "availability-of-attorneys" factors "should be uniformly applied by the New Orleans district courts"); *Washington v. Barnhart*, 93 F. App'x 630, 631 (5th Cir. 2004) (instructing a court from the Southern District of Texas to "be cognizant of the need for uniformity" in cost of living adjustments on remand).

On remand of the *Baker* cases, Chief Judge Sanders entered an Agreed Order that expressly provides that the DFW CPI "is the most appropriate base index for computing the increased cost of living."  *Baker v. Bowen*, No. 3:82-CV-0095G, Agreed Order at 2, ¶ 3 (N.D. Tex. 1989).  The terms of the Order applied to "all EAJA applications in Social Security disability cases [then] pending in the Dallas Division, as well as [to] all future applications of this type, until such time as appropriate modifications [were] made by later order."  *Id.* at 3, ¶ 5. Since that time, the DFW CPI has been repeatedly applied in EAJA fee award calculations, largely leading to the required uniformity.  *See, e.g.*, *Benton v. Astrue*, No. 3:12-CV-0874-D, 2013 WL 818758, at *1 (N.D. Tex. 2013) (Fitzwater, C.J.); *Leroux v. Astrue*, No. 3:10-CV-2634-M, 2012 WL 6757772, Doc. 21-2 at 4 (N.D. Tex. 2012), *rec. adopted*, 2013 WL 28577 (N.D. Tex. 2013) (Lynn, J.); *Silva v. Colvin*, No. 3:12-CV-4697-N-BK, Doc. 23 at 7, Doc. 27 (Godbey, J.); *Carr v. Astrue*, No. 3:10-CV-1474-BH, 2011 WL 5985292, Doc. 30 at 3 n.1; Doc. 31-3 (N.D. Tex. 2011) (Ramirez, M.J.); *Bentley v. Astrue*, No. 3:10-CV-00032-L-BF, 2011 WL 2923970, Doc. 23-2 at 3-4 (N.D. Tex. 2011), *rec. adopted*, 2011 WL 2938223 (N.D. Tex. 2011) (Lindsay, J.); *Hayes v. Astrue*, No. 3:09-CV-2018-G-BK, 2010 WL 5479611, Doc. 27-2 at 3-4 (N.D. Tex. 2010), *rec. adopted*, 2011 WL 9049 (N.D. Tex. 2011) (Fish, J.); *Hooker v. Astrue*, No. 3:08-CV-0445-B, 2010 WL 3719231, Doc. 35 at 3-4 (N.D. Tex. 2010) (Boyle, J.); *Daniels v. Astrue*, No. 3:05-CV-1543-L, 2008 WL 4137982, Doc. 25 at 4 (N.D. Tex. 2008) (Lindsay, J.); *Taylor v. Apfel*, No. 3:98-CV-2752-P (N.D. Tex. 1999) (Solis, J.).

Additionally, the undersigned recently held in a contested fee dispute that the appropriate CPI was DFW rather than the Urban South CPI.  *See Skinner v. Colvin*, No. 3:12-CV-01021-BK (N.D. Tex. 2013) (Doc. 26 at 2-3) (citing *Benton*, 2013 WL 818758 at *1 and *Anderson v. Astrue*, No. 4:11-CV-317-Y (N.D. Tex. 2013)).  Other judges have followed suit.  *See Ruiz v.*

8

*Colvin*, No. 3:11-CV-1706-BJ, 2013 WL 5310103, *2-3 (N.D. Tex. 2013) (Ramirez, M.J.);
*Garza v. Colvin*, No. 3:11-CV-3545-G-BN, 2013 WL 3289236, *2 (N.D. Tex. 2013) (Fish, J.);
*McWhirter v. Colvin*, 3:11-CV-608-BF, 2013 WL 1820912, *1 (N.D. Tex. 2013) (Stickney,
M.J.).

      While Plaintiff cites to cases from other circuits holding that the national CPI provides
the most accurate, uniform method of calculating the cost of living adjustment, adopting that
method would contravene the intent of the *Baker* court and <u>this Court's Agreed Order</u>.  Indeed,
the *Baker* court emphasized "the cost of living . . . in a particular locale" and noted that "the cost
of living index for the geographical area" was "certainly significant" although perhaps not
conclusive, with the determination of weight being left up to the district court.  *Baker v. Bowen*,
839 F.2d 1075, 1084 (5th Cir. 1988).  Judge Sanders' decision in the Agreed Order was that the
Dallas division would be bound by the DFW CPI in calculating EAJA fees.  *Baker v. Bowen*, No.
3:82-CV-0095G, Agreed Order at 2, ¶ 3.  There is no indication that the Agreed Order has been
modified or reversed.  *See* *Hamblen*, − F.Supp.2d −, 2014 WL 1516157, at *3 (noting that the
Agreed Order remains in effect).

      Moreover, it would appear unfair to award higher rates to attorneys who office and reside
in the Dallas metropolitan area but also practice before other courts, than the rates awarded
attorneys who practice exclusively before this Court.  Indeed, doing so would result in the sort of
"arbitrary" fee award that the Fifth Circuit discouraged in *Baker*.  *See* *Hamblen*, − F.Supp.2d −,
2014 WL 1516157, at *5 (observing that applying the national CPI in calculating an EAJA fee
award would result in interstate attorneys obtaining higher fees for the exact same work and
effort by local attorneys handling cases in the same legal market and noting that the use of
technology allowed local and out-of-state attorneys to litigate from anywhere).  Indeed, using the

local index is arguably the "fairer course" because it considers the "cost of living actually

experienced" by Plaintiff's counsel, who reside and office in the Dallas area. *Hamblen*, −

F.Supp.2d−, 2014 WL 1516157 at *3 (citation omitted). This "avoids the pitfalls of using the

national CPI" such as: "(1) depriving an attorney of the actual increase in the CPI where he

works when that increase . . . is greater than the increase in the national CPI; [and] (2) creating a

windfall [for the attorney] where the national CPI increase is greater than either the applicable

local or regional CPI increase." *Id.*; *see also Mannino v. West*, 12 Vet. App. 242, 243-44 (1999)

(noting that the weight of authority in the circuit and district courts favors applying local CPIs).

      Finally, applying the DFW CPI to cases in this division will best serve the EAJA's dual

purpose of (1) ensuring adequate legal representation for Dallas residents seeking Social Security

benefits by paying sufficient remuneration to all attorneys who provide that type of

representation in this division; and (2) minimizing the cost of such representation to taxpayers.

*See Baker*, 839 F.2d at 1083. And because most judges in this division have routinely applied

the DFW CPI as required by the Agreed Order entered by Judge Sanders in 1989, application of

that index in this case will help maintain the required uniformity. *See Hamblen*, − F.Supp.2d −,

2014 WL 1516157, at *3 (noting that courts in the Dallas division appear to have consistently

applied the DFW CPI when awarding EAJA attorneys' fees since the entry of the Order) (citing

cases).

      Accordingly, pursuant to the DFW CPI, the applicable hourly rates in this case are

$181.45 for work performed in 2013 and $183.74 for work performed in 2014. (Doc. 26 at 6

n.4; Doc. 26-2 at 1). Counsels' billable total of 60 hours in 2013 multiplied by a rate of $181.45

equals $10,887.00.[3] *See* Doc. 24-3 at 1-6. Counsels' billable total of 9.17 hours in 2014

---

[3] The Court notes that co-counsel mistakenly calculated his total minutes worked as 290 rather
than 280. (Doc. 24-3 at 6).

multiplied by $184.74 equals $1,694.07.  *See* Doc. 24-3 at 5-6; Doc. 27 at 9.  Adding to that figure counsels' legal assistant's billable total of $337.50 results in a total award of $12,918.57. *See* Doc. 24-3 at 7.  Plaintiff also is entitled to reimbursement of the $400.00 filing fee.

      With respect to the Commissioner's request that this payment be made payable to Plaintiff, the Supreme Court has held that EAJA awards are payable directly to the prevailing party, not his attorney.  *Ratliff*, 560 U.S. at 592-93.  The Court of Appeals for the Fifth Circuit recently reiterated this point.  *Jackson v. Astrue*, 705 F.3d 527, 531 n.11 (5th Cir. 2013) (citing *McGraw v. Barnhart*, 450 F.3d 493, 503 (10th Cir. 2006), which noted that EAJA fees are paid to the claimant "who may or may not tender that award to counsel, regardless of their agreement.").  Accordingly, the award of attorneys' fees in this case is to be made payable to Plaintiff and sent in care of his attorney.

**3.   Conclusion**

      For the foregoing reasons, the Court recommends that Plaintiff's *Application for Attorneys' Fees Under the Equal Access to Justice Act* (Doc. 24) be **GRANTED** to the extent that Plaintiff be awarded $12,918.57 in attorneys' fees and reimbursement of the filing fee in the amount of $400.00.

      **SO RECOMMENDED** on May 19, 2014.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE